STATE of Missouri, Respondent,

v.

Robert Lee CAMPBELL, Appellant.

No. 55796.

Supreme Court of Missouri,
Division No. 2.

April 12, 1971.

John C. Danforth, Atty. Gen., Kermit W. Almstedt, Asst. Atty. Gen., Jefferson City, for respondent.

Ellis S. Outlaw, St. Louis, John J. Spencer, Washington, D. C., for appellant.

BARRETT, Commissioner.

In shooting and killing William D. Beale a jury found Robert Lee Campbell guilty of murder in the second degree. The jury was unable to agree on the punishment and the court fixed the punishment at 25 years' imprisonment, a penalty within the statute and upon this record not necessarily cruel and unusual punishment. RSMo 1969, § 559.030, V.A.M.S.; State v. Gray, Mo., 360 S.W.2d 642.

On April 27, 1968, Gussie Lee Jones operated Lil's Blueroom Lounge at 911 N. Sarah Street. The defendant-appellant Campbell came into the tavern, according to his witness and companion Ulmer, with "two ladies," and ordered a drink. By reason of a prior episode, probably involving a gun, Gussie almost immediately requested that he leave and she started escorting him to the door. When, according to one witness, Campbell appeared to "swing" at Gussie, Beale and a man known as "Dove" assisted her in forcibly ejecting him from the tavern. In 15 or 20 minutes Campbell returned to the tavern, this time with a gun in his right hand. He walked up to Beale sitting on a bar stool, "words" followed, some said Campbell invited Beale outside, others said that he threatened "I'll kill you." In any event Campbell and Beale "tussled," they tumbled over a chair and fell to the floor, Beale on top, and there were four or more shots. Campbell ran out the door and was arrested in Chicago about eighteen months later. No one saw Beale with a weapon and no weapon was found when he was picked up from the sidewalk. One witness, a barmaid, said that the gun went off before they fell: "The shooting had been done when they were laying on the floor." Police recovered five shell casings for a .25 caliber automatic and there were two bullet holes in the ceiling. During an autopsy on Beale a .25 caliber bullet was recovered and removed, police officers said that the casings and bullet fit

a certain gun. The entrance wound "went in here in the second space," it "came from the sixth intercostal space, and that would be approximately half-way down the back." According to the doctor the cause of Beale's death was "a gunshot wound of the pulmonary artery."

Thus unlike in State v. Simler, 350 Mo. 646, 167 S.W.2d 376, 383, the cause of Beale's death was established and the corpus delicti, "the death of a human being and the criminal agency of another" (State v. Bennett, Mo., 87 S.W.2d 159), proved beyond dispute. State v. Hawkins, Mo., 165 S.W.2d 644. Not only does the recited testimony establish the corpus delicti, it cogently supports the finding of an intentional killing and every element of murder in the second degree. State v. Mitchell, Mo., 408 S.W.2d 39 and a case very similar in almost every detail, State v. McQueen, Mo., 399 S.W.2d 3. In this connection the jury could and did find a gun in Campbell's right hand, one or more shots by him and finally a fatal wound all encompassed in the main instructions. State v. Logan, 344 Mo. 351, 126 S.W.2d 256. In Instruction 4 the court fully instructed the jury on self-defense, for which incidentally there was scant support, and therefore the court did not err in refusing to give appellant's imperfect instruction on the same subject. State v. Havens, Mo., 177 S.W.2d 625, 628–629; State v. Huffer, Mo.App., 424 S.W.2d 776.

Campbell's counsel vigorously argued that the court erred in admitting evidence of his admissions to police, claiming that there was an illegal arrest, no warrant, a coerced statement and an invasion of constitutional safeguards, particularly within the meaning of the landmark cases, Miranda, Escobedo and Chapman. The insuperable difficulty with all these claims is that there is no factual support for them in this record. All that appears here is that Campbell was arrested by police officers in Chicago, presumably by Chicago police. Two St. Louis police officers, Hummert and Tuminello, went to Chicago police

headquarters on October 28, 1969, and there "took the subject into custody." Officer Hummert, in testifying in this case, said that they warned Campbell of his rights, "they were read off the card," but he did not want a lawyer, simply "wanted to tell us what happened." As to Campbell's arrest in Chicago: "We asked him who arrested him and he said the F. B. I." Thus other than counsel's statements in making his objections there is no factual support or basis for the application or invocation of the great constitutional issues and cases.

Accordingly the judgment is affirmed.

STOCKARD, and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.